**Bonjean Law Group, PLLC**
**1000 Dean St., Ste. 422**
**Brooklyn, New York 11238**
**Tel: (718) 875-1850**
**Fax: (718) 230-0582**
**jennifer@bonjeanlaw.com**

Attorney for Plaintiffs

---

### UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY CAMDEN VICINAGE

---

**ANTOINE JONES & BRIAN WILSON**,

                Plaintiffs,

   v.

**ACPD OFFICER ANDREW JAQUES; ACPD OFFICER ANTHONY GLENN ABRAMS JR.; CITY OF ATLANTIC CITY, AND OTHER UNKNOWN ATLANTIC CITY OFFICERS.**
         Defendants.

**COMPLAINT**
**AND JURY TRIAL DEMAND**

---

    **NOW COMES** Plaintiffs, ANTOINE JONES and BRIAN WILSON by and through their attorney the **BONJEAN LAW GROUP, PLLC**, and for cause of action against the defendants, both jointly and severally, respectfully states as follows:

#### INTRODUCTION

    1.    On the evening of February 14, 2017, Plaintiffs Jones and Wilson were driving in Atlantic City when they were stopped, detained, threatened, and intrusively searched – all because they are young African-American men who had the misfortune of crossing paths with defendants

1

ABRAMS and JAQUES.

2.      The young men were committing no crimes nor violating any traffic rules. But defendants ABRAMS and JAQUES, apparently with time on their hands, stopped, detained, and searched the young men in hopes of discovering contraband or baiting them to fight.

4.      With no provocation whatsoever, Defendant JAQUES repeatedly yelled, cursed, verbally abused and threatened physical violence against the young men simply because plaintiff Wilson asked JAQUES to return the cell phone that he unlawfully and violently snatched from plaintiff's hand.

5.      As Defendant ABRAMS and other unknown Atlantic City Police officers stood by silently, Defendant JAQUES threatened to allow his 90-lb. dog to "rip the fuck" out of the young men's bodies and promised to "knock them the fuck out" if they "frogged up." Plaintiffs remained calm and composed in the face of JAQUES' violent tirade that was clearly designed to provoke the young men into a violent encounter that would not have ended well for them.

5.      After forcing the young men to turn off their recording devices so the defendants' unconstitutional conduct could not be captured on video, ABRAMS and JAQUES ordered the men out of the car and subjected them to an invasive search that involved touching their genital area. No reasonable suspicion or probable cause justified this intrusive touching.

6.      The defendants' unconstitutional conduct was done pursuant to a number of policies and practices of the Atlantic City Police Department ("ACPD"). Indeed, it is standard operating procedure for ACPD officers to terrorize young people of color in Atlantic City, by stopping them, searching them, harassing them, and provoking them to respond in a manner that frequently results in violence and false charges.

7.      Plaintiffs suffered significant damages from this traumatizing encounter with two

of ACPD's most corrupt officers.

**PARTIES**

8.      Plaintiff Jones is a 22-year old adult resident citizen of Pleasantville, Atlantic County, New Jersey.

9.      Plaintiff Wilson is a 21-year old adult resident citizen of Atlantic City, Atlantic County, New Jersey.

10.      Defendant Atlantic City, New Jersey, is a municipality chartered by the State of New Jersey and as such is a political subdivision of the State of New Jersey and among its other functions operates and maintains a law enforcement agency known as the Atlantic City Police Department. Atlantic City is under a duty to run its policing activities in a lawful manner so as to preserve the rights, privileges, and immunities guaranteed and secured to them by the Constitutions and laws of the United States and the State of New Jersey.

11.      On information and belief, defendant Atlantic City Police Officer Andrew Jaques is an adult resident citizen of Atlantic County, New Jersey. At all times material hereto, Defendant Jaques was a member of the Atlantic City Police Department and was acting by virtue of his position as a law enforcement officer of the Atlantic City Police Department and under the color of state law. Defendant Jaques is sued individually and in his official capacity as a member of the Atlantic City Police Department.

12.      On information and belief, defendant Atlantic City Police Anthony Glenn Abrams, Jr. is an adult resident citizen of Atlantic County, New Jersey. At all times material hereto, Defendant Abrams was a member of the Atlantic City Police Department and was acting by virtue of his position as a law enforcement officer of the Atlantic City Police Department and under the color of state law. Defendant Abrams is sued individually and in his official capacity

as a member of the Atlantic City Police Department.

## JURISDICTION AND VENUE

13.     Each and all acts of defendants were performed under the color and pretense of the constitutions, statutes and ordinances, regulations, customs, and usages of the United States of America, the State of New Jersey, the County of Atlantic, and the City of Atlantic City, and under the authority of their office as law enforcement officers for Atlantic City, New Jersey.

14.     The incidents which give rise to this cause of action occurred within this jurisdiction and within two years of the filing of this Complaint.

15.     Venue is proper in this venue pursuant to 28 U.S.C. § 1391, as all the defendants are residents of this district and/or all the acts or omissions which give rise to this cause of action occurred within this district.

16.     Jurisdiction is proper pursuant to federal question jurisdiction, 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3)(4) and 42 U.S.C. § 1983. Plaintiffs further invoke the pendent and supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367.

## FACTUAL ALLEGATIONS

Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this complaint and by reference makes said paragraphs a part hereof as if fully set forth herein:

17.     On the evening of February 14, 2017, Antoine Jones drove his 2001 Saturn on Mediterranean avenue. His friend, Brian Wilson, was seated in the front passenger seat.

18.     While stopped at the intersection of Mediterranean and Pennsylvania avenues, defendant ABRAMS pulled up to the driver's side of the car and motioned Jones to pull over.

19.     Defendant ABRAMS had no reasonable suspicion or probable cause to stop and

4

detain plaintiffs as they were not violating any laws or rules of the road.

19.     Defendant ABRAMS was known to plaintiffs as an officer who routinely stopped and searched young African-American men in the community without legal justification, solely for the purpose of harassing them. Defendant ABRAMS made a habit out of instigating conflict with young African-American males in Atlantic City, particularly those who lived in the housing projects. ABRAMS was feared because he was known for falsely charging young African-American men with crimes they did not commit.

20.     Plaintiff Jones complied with ABRAMS' unlawful order and pulled his car over. Plaintiffs produced their identification to ABRAMS and two more Atlantic City police cars arrived on the scene driving at a high rate of speed.

21.     One of those officers was defendant Andrew JAQUES who pulled up to the scene like a lunatic. Driving at an exceptional rate of speed, JAQUES brought his police vehicle to a screeching halt directly in front of Plaintiffs' car as if he was responding to the arrest of someone on the FBI's most wanted list. JAQUES is an ACPD K9 officer and arrived on the scene with his K9 partner.

22.     Defendant JAQUES drove so recklessly that Plaintiffs feared he would crash into their vehicle. Even bystanders on the street were forced to jump away from the curb and retreat in fear for their safety.

23.     A third police vehicle arrived on the scene at a fast rate of speed and parked at the rear of Plaintiffs' vehicle. All told three Atlantic City police cars arrived on the scene of this unlawful traffic stop and illegal detention of plaintiffs.

24.     Defendants JAQUES and ABRAMS positioned themselves at the passenger window of Jones' car. Fearing for their safety and concerned that they may be falsely charged

for crimes, Plaintiffs pulled out their cell phones to capture the police encounter on video.

25.     Defendant JAQUES stuck his hand in the passenger window and violently grabbed plaintiff Wilson's phone out of his hand. JAQUES then leaned his head into the window of the car and ordered plaintiff Jones to "get the phone out of his face."

26.     A portion of this encounter was captured on video and can be viewed at https://drive.google.com/file/d/1juUW6l2RoA0VQuWAGn53A3Ig8h_Qd30u/view

27.     In calm voices, Plaintiffs explained that they had their phones out because they were concerned about being falsely charged. Plaintiff Jones questioned why they were stopped in the first place. Plaintiff Jones politely inquired, "what's the probable cause?" while plaintiff Wilson asked that the officer return his phone to him.

28.     In a highly agitated state, Defendant JAQUES began yelling and threatening the plaintiffs who were seated calmly and posed no threat to the officers. Indeed, defendant JAQUES' behavior bordered on the bizarre and seemed design to provoke a reaction from the young men who continued to show the utmost restraint.

29.     In response to plaintiff Wilson's request that the officer return his phone to him, defendant JAQUES lost his composure and began yelling, "I'm gonna explain this one time and one time only. This is gonna go two ways. You are gonna act like a gentleman and I'm gonna treat you like gentleman, you frog the fuck up I guarantee you that that 90 pound dog is gonna come out and rip the fuck outta you. So calm the fuck down."

30.     Defendant JAQUES continued unprovoked, "[i]f your hand disappears I'm gonna knock you the fuck out. Put your hand in my face, I'm gonna knock you the fuck out. I'm that fucking guy you understand me? So calm the fuck down."

31.     Fearful of defendant JAQUES' erratic behavior and threats, plaintiffs responded

6

to his tirade by saying "yes, sir." But defendant JAQUES continued, threatening to lock the young men up. He yelled, "you'll go away, real cool. You start to act like a fucking fool I will drag you out of this fucking window. Do you understand?"

32.    Plaintiff Wilson then apologized to the officer just so as to diffuse the situation, but defendant JAQUES continued to rage. JAQUES was insistent on escalating tensions and clearly hoping to provoke a response from the young men that would justify using violence against them and charging them with crimes. With no provocation whatsoever, Defendant JAQUES threatened, "you wanna frog the fuck up. I got no problem. We'll step out and bang. I got no problem."

33.    Defendant JAQUES again ordered plaintiff Jones to turn off his phone since they were on "lawful detention" and did not have the right to use their phones. Jones complied with the order, nervously.

34.    During this entire exchange, defendant ABRAMS stood directly next to defendant JAQUES. Other unknown officers stood nearby watching these events unfold.

35.    After defendant JAQUES forced plaintiffs to turn off the video, plaintiffs were ordered out of the car, ordered to put their hands up against the car, and physically searched by Defendants JAQUES and ABRAMS. Both men were subjected to unwanted and humiliating touching of their genitalia. The officers also searched plaintiffs' car.

36.    During the entire encounter, plaintiffs could hear defendant JAQUES' K9 partner barking ferociously from his police vehicle.

37.    At the end of the protracted and terrifying stop, plaintiffs were told they could leave. They were not charged with any violations or offenses.

38.    Plaintiffs promptly filed an internal affairs complaint against the officers with

the Atlantic City Police Department.

### Pattern of Misconduct by Defendants JAQUES and ABRAMS

39.     The defendants' conduct in this case is not unique or isolated.

40.     Defendant ABRAMS has a prodigious history of internal affairs complaints for improper search, harassment, and excessive force. He is currently the defendant in at least one other pending civil rights actions *Stadler v. Abrams, et al*, 13-2471 in which Plaintiff has alleged excessive force.

41.     ABRAMS accumulated 26 internal affairs complaints in an 8-year period, nearly all involving allegations of improper search, false arrest, harassment, and excessive force.

42.     In *Stadler v. Abrams, et al*., 2017 U.S. Dist. LEXIS 164225 (D.N.J. 2017), the Honorable District Court Judge Kugler ruled in a denying defendant ABRAMS' motion for summary judgment:

> Atlantic City has received numerous complaints about its police officers. Officers Abrams, Moore, and Devlin accumulated more that 69 internal affairs complaints across a 10-year period, with 38 of those involving a claim of excessive force, assault, or domestic violence. Not a single excessive force complaint against these three officers has ever been sustained. Plaintiff's police practice expert, Dr. Jon Shane, a professor of criminal justice at John Jay College who has been studying or working in law enforcement in either a civilian or sworn capacity since 1985, has identified a pattern of complaints against Officers Abrams and Devlin. Dr. Shane concluded that their actions were not consistent with various standards in the field, including the Commission on Accreditation for Law Enforcement Agencies (CALEA), the New Jersey Attorney General's police for internal affairs on risk management procedures, and the ACPD's police for internal affairs on risk management. Complaints against Officers Abrams and Devlin steadily increased each year until 2015. There is a long record of complaints filed against other officers of the ACPD, who similarly have seldom – or never – faced consequences for the complaints. *Id*. at *9.

43.     On information and belief, defendant JAQUES has a similarly egregious internal affairs history consisting of numerous allegations of excessive force, improper search, and

harassment. On information and belief, JAQUES was previously accused of participating in a race-motivated assault as a police officer in another department.

44.     Retired Atlantic City Police Department K9 trainer, Joe Rodriguez, previously testified under oath that he disagreed with the ACPD's decision to award JAQUES a prestigious K9 position because he believed that JAQUES was too aggressive and did not have the temperament for the position of K9 handler. The department disregarded the head trainer's advice and awarded JAQUES with a K9 position anyway.

**Atlantic City's Well-Settled Practice of Condoning, Indeed, Rewarding Unconstitutional Conduct of its Officers**

45.     Defendant JAQUES and ABRAMS' conduct is not unique to the Atlantic City Police Department and was undertaken pursuant to a number of *de facto* policies and practices of the department.

46.     Atlantic City has a widespread practice of allowing its officers, including defendants JAQUES and ABRAMS, to harass and unlawfully search Atlantic City citizens without fear of discipline. This widespread practice is directed overwhelmingly toward people of color.

47.     Even though defendants JAQUES and ABRAMS have accumulated substantial internal affairs histories including complaints of improper search and harassment. Not a single complaint has ever been sustained. A majority of allegations against JAQUES and ABRAMS for improper search, harassment, and excessive force were brought by people of color. Indeed, a majority of allegations against *all* Atlantic City police officers involving improper search, harassment, and excessive force are brought by people of color.

48.     Defendant ABRAMS has previously testified under oath that although he

purportedly triggered ACPD's "early warning system," ("EWS") in 2008, 2009, 2011, and 2012, he had never received a notice during his career as a police officer that he triggered the EWS. Numerous Atlantic City police officers have testified similarly in depositions acknowledging that they had triggered the EWS their entire careers but had never seen any response or even notice from the department.

49.     Significantly, between 2007 and 2014, Atlantic City logged roughly 150 internal affairs complaints for unlawful search. Not a single one was sustained. During that same period, Atlantic City logged roughly 570 complaints for excessive force, only two were sustained. Atlantic City's sustain rate for civilian complaints is less than 1% while the national average for sustain rates in municipalities roughly the same size as Atlantic City is 12%.

50.     There is no reason to believe that Atlantic City has done anything to improve how it handled officer misconduct or its internal affairs process. The current Chief of Police, Henry White, confessed at a deposition in 2016 that ACPD's low sustain rates, "didn't look good" but he made no effort to determine the cause of those low sustain rates.

51.     Atlantic City's failure to monitor, supervise and discipline its officers has resulted in the department being sued dozens of time in the past five years.

52.      On October 9, 2014, the New Jersey Law Journal reported that Atlantic City leads New Jersey in police civil rights lawsuits.

## COUNT I
### 42 U.S.C. § 1983 – Search and Seizure

Plaintiff hereby incorporates, in their entirety, each and every paragraph of this Complaint  and by reference makes said paragraphs a part hereof as if fully set forth herein.

53.      Defendants committed the above described actions and/or omissions under the

10

color of law and by virtue of their authority as law enforcement officers for Atlantic City, and substantially deprived Plaintiff of his clearly established rights, privileges, and immunities, guaranteed to him as a citizen of the United States in violation of 42 U.S.C. § 1983, and deprived Plaintiff of his rights guaranteed to him under Fourth Amendment to the United States Constitution.

54.     As set out in detail above, Defendants ABRAMS and JAQUES and other UNKNOWN ACPD OFFICERS restrained Plaintiffs' freedom by ordering them to pull the car over, surrounding their car, demanding their identification, telling them they were lawfully detained and confiscating their phones and ordering them to stop recording. Defendant JAQUES physically grabbed Plaintiff Wilson's phone out of his hand and refused to return it upon request.

55.     Plaintiffs were not free to leave as they were surrounded by three Atlantic City police vehicles and both Defendants JAQUES and ABRAMS told them they were "lawfully" detained.

56.     Plaintiffs were restrained in their car and subjected to repeated threats of physical harm, including being ripped apart by a 90-lb dog and getting "knocked the fuck out." Plaintiffs were in fear of their safety and well-being throughout the entire detention.

57.     Defendants ABRAMS and JAQUES' had no probable cause or reasonable suspicion to believe that plaintiffs had committed or were about to commit any crimes. Plaintiffs were not violating any traffic rules and were ultimately released without any charges.

58.     Defendants' conduct was unjustified and unreasonable.

59.     Defendants JAQUES and ABRAMS also subjected plaintiffs to a search of their bodies after they were ordered out of the car. That search included a touching of their genital

area that was unjustified, unreasonable and intrusive. Defendants had no reasonable suspicion to believe that the plaintiffs were armed or dangerous or were concealing any contraband.

60.    Defendants JAQUES and ABRAMS searches of Plaintiffs' bodies, including their genital area was unjustified and unreasonable.

61.    As a direct and proximate result of the acts and omissions of Defendants, Plaintiff's constitutional rights were violated and Plaintiffs were injured.

## COUNT II
### 42 U.S.C. § 1983 – Selective Enforcement ("Racial Profiling")

Plaintiff hereby incorporates, in their entirety, each and every paragraph of this Complaint  and by reference makes said paragraphs a part hereof as if fully set forth herein.

62.    Defendants committed the above described actions and/or omissions under the color of law and by virtue of their authority as law enforcement officers for Atlantic City, and substantially deprived Plaintiff of his clearly established rights, privileges, and immunities, guaranteed to him as a citizen of the United States in violation of 42 U.S.C. § 1983, and deprived Plaintiffs of their rights guaranteed to them under Fourteenth Amendment to the United States Constitution.

63.    Defendants ABRAMS, JAQUES, and UNKNOWN ACPD OFFICERS' unlawful stop, detention, and search of Plaintiffs was motived by Plaintiffs' status as African-American men

64.    Defendants ABRAMS and JAQUES have a pattern and practice of stopping, detaining, searching and harassing African-American men without reasonable suspicion or probable cause to do so.

65.     On information and belief, both ABRAMS and JAQUES have lengthy internal affairs histories for unlawful searches and excessive force brought primarily by people of color.

66.     Plaintiffs have witnessed defendant ABRAMS stop and search other young black men from the housing projects without any legal justification or basis to do so.

67.     On information and belief, Defendant JAQUES was previously involved in a race-motivated assault during which he repeatedly used the word "nigger."

68.     Significantly, during this stop and detention of Plaintiffs, Defendant JAQUES used the curious expression "frog up on me" on two occasions. Defendant JAQUES used this expression because Plaintiffs are young black men. He would not have used this particular slang if Plaintiffs were not young black men.[1]

69.     Defendant ABRAMS is also known to use derogatory names against people of color.

70.     If Plaintiffs were not young black men, Defendants would not have stopped them without probable cause, would not have threatened them with physical harm, would not have confiscated their phone, would not have ordered them out of the car, and would not have searched their bodies and specifically their genital area.

71.     As a direct and proximate result of the acts and omissions of Defendants, Plaintiff's constitutional rights were violated and Plaintiffs were injured.

<u>COUNT III</u>
**42 U.S.C. § 1983 – Failure to Intervene**

72.     Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully

---

[1] Use of this expression is rare but can be heard in the 1997 American crime drama film *Hoodlum* that gives a fictionalized account of the gang war between the Italian/Jewish mafia alliance and the Black gangsters of Harlem that took place in the 1920s and early 1930s.

set forth herein.

73.     In the manner described above, one or more of the individual defendants, including those yet-to-be-named, stood by without intervening to prevent the alleged constitutional violations, despite having an opportunity to do so.

74.     The misconduct described in this complaint was objectively unreasonable and was undertaken intentionally, with malice, with willful indifference to Plaintiffs' constitutional rights.

75.     As a direct and proximate result of this failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered injuries, including, but not limited to, loss of liberty, humiliation, degradation, emotional pain and suffering, and other damages.

76.     The misconduct described above in this Count by the Defendant officers was undertaken pursuant to the policy and practice of the Atlantic City Police Department, in the manner more fully described below in Count V.

## COUNT IV
### 42 U.S.C. § 1985(3) – Civil Conspiracy

Plaintiffs hereby incorporate, in its entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

77.     Defendants conspired to violate the civil rights of Plaintiffs by targeting them for unwarranted harassment, detention, and intrusive searches for no other reason than they were young African-American men.

78.     Defendants ABRAMS and JAQUES entered into an agreement to unlawfully stop, search and seize Plaintiffs for the purpose of harassing them on account of their race. Defendant ABRAMS and JAQUES had previously harassed young men of color before. Defendants knew their stop was unjustified, unlawful and motived by their animus toward African-American men.

14

79.     Defendants' unconstitutional search and seizure of Plaintiffs was motivated by their discriminatory animus toward African-Americans – a class entitled to protection under § 1985(3). Defendants ABRAMS and JAQUES routinely targeted African-American men for harassment. They did not routinely stop and harass white men.

80.      Defendant ABRAMS and JAQUES had a conscious objective to violate the constitutional rights of African-Americans by subjecting them to unlawful detentions, intrusive searches, and threatening conduct.

81.     As a result of Defendants' conduct, Plaintiffs suffered emotional injuries.

## COUNT V
### 42 U.S.C. § 1983 – *Monell* Policy Claim

Plaintiff hereby incorporates, in their entirety, each and every paragraph of this Complaint  and by reference makes said paragraphs a part hereof as if fully set forth herein.

82.     Defendant Atlantic City is under a duty to supervise the members of the Atlantic City Police Department and to ensure that the policing activities of the Atlantic City Police Department are run in a lawful manner preserving to the citizens of Atlantic City the rights, privileges, and immunities guaranteed to them by the Constitutions of both the United States of America and the State of New Jersey.

83.     All of the facts set forth in paragraphs 39 through 52, taken in their entirety, demonstrate with specificity that Defendant Atlantic City permitted, encouraged, tolerated, and knowingly  acquiesced to an official pattern, practice, and/or custom of its police officers, particularly those  named in this lawsuit, of violating the constitutional rights of the public at large, including the  Plaintiff. In particular, the city of Atlantic City had actual knowledge that defendants had a  propensity to deprive the citizens of Atlantic City, New Jersey of their

constitutional rights and  failed to take proper action to protect the citizens of Atlantic City, New Jersey from defendants.

84.     The actions of Atlantic City were unjustified, unreasonable, unconstitutional, and deprived Plaintiff of his constitutional rights in violation of the Fourth and  Fourteenth Amendments to the United States Constitution.

85.     Defendant Atlantic City is directly liable for the Plaintiff's damages due to the following policies, practices, or customs of the Atlantic City Police Department, which were in effect at the time of this incident and which were the underlying cause of the Plaintiffs' injuries:

        a.      Atlantic City and the Atlantic City Police Department have a permanent and well-settled practice or custom of allowing police officers (including Jaques and Abrams) to stop, detain, and search civilians' persons and possessions without probable cause or any reasonable suspicion creating an atmosphere of illegal and unconstitutional behavior in  deliberate indifference and reckless disregard for the welfare of the public at large, including  Plaintiffs.

        b.      Atlantic City and the Atlantic City Police Department have a permanent and well-settled practice or custom of allowing police officers (including Jaques and Abrams) to threaten and/or use excessive force and/or unreasonable force without fear of discipline, creating an atmosphere of illegal and unconstitutional behavior in deliberate indifference and reckless disregard for the welfare of the public at large, including Plaintiffs;

        c.      Atlantic City and the Atlantic City Police Department have a permanent and well-settled practice of allowing police officers (including Jaques and Abrams) to target people of color for unjustified and unlawful stops, detentions, searches and

16

harassment, creating  an atmosphere of illegal and unconstitutional behavior in deliberate indifference and reckless  disregard for the welfare of the public at large, including Plaintiff;

       d.     Atlantic City and the Atlantic City Police Department have a permanent and well-settled practice or custom allowing police officers (including Jaques and Abrams) to file false police reports, fabricate evidence, destroy  evidence, and make false statements as a tool to conceal their own illegal and unreasonable conduct in deliberate indifference and reckless disregard for the welfare of the public at large,  including Plaintiff.

       e.     Atlantic City and the Atlantic City Police Department have a permanent and well-settled practice of failing to protect the Citizens of Atlantic City from the unconstitutional actions of police officers, including Defendants ACPD officers by providing officers with extensive histories of civilian complaints alleging assault and excessive force with deadly canines to use in their policing activities and thereby creating an atmosphere of illegal and  unconstitutional behavior in deliberate indifference and reckless disregard for the welfare of the  public at large, including Plaintiff.

       f.     Atlantic City and the Atlantic City Police Department have a permanent and well-settled practice of failing to protect the Citizens of Atlantic City from the unconstitutional actions of police officers by consistently exonerating rogue police officers, by refusing to meaningfully investigate civilian complaints, by mislabeling complaints involving serious and/or criminal charges as administrative complaints, and concealing misconduct committed by officers by re-naming their misconduct with ambiguous

17

labels, and by creating an atmosphere of illegal and unconstitutional behavior in deliberate indifference and reckless disregard of the welfare of the public at large, including the Plaintiff.

g.     Atlantic City and the Atlantic City Police Department have a permanent and well-settled practice of refusing to adequately respond to and investigate complaints regarding officer misconduct by the citizenry, including, but not limited to complaints regarding unlawful stop and searches, harassment, differential treatment, excessive force, and the misuse of the K-9 Units, thus creating an atmosphere of illegal and unconstitutional behavior in deliberate indifference and reckless disregard to the welfare of the public at large, including Plaintiff.

h.     Atlantic City and the Atlantic City Police Department have a permanent and well-settled practice of allowing rogue officers to corrupt the Internal Affairs investigations by promulgating false and fabricated evidence, making patently false statements, and by destroying evidence, creating an atmosphere of illegal and unconstitutional behavior in deliberate indifference and reckless disregard to the welfare of the public at large, including Plaintiffs.

86.     Defendant Atlantic City is directly liable for Plaintiff's damages due to the following policies or customs of inadequate training, supervision, discipline, screening, or hiring, which were in effect at the time of this incident and which were the underlying cause of the Plaintiff's injuries:

a.     All of the facts set forth in paragraphs 39 through 52, taken in their entirety, demonstrate with specificity that Atlantic City and the Atlantic City Police Department failed to adequately train and supervise police officers (including Abrams and

Jaques) regarding probable cause or reasonable suspicion determinations, proper search procedures, use of canines, appropriate and professional demeanor, de-escalation of force, use of force, use of canines in policing activities; racial profiling; and internal affairs procedures, and such failure to train had the obvious consequence of leading to constitutional violations in deliberate indifference and reckless disregard of the welfare of the public at large, including Plaintiff;

b.      Atlantic City and the Atlantic City Police Department failed to adequately monitor and evaluate the performance of its officers (including Abrams and Jaques) and their compliance with the laws and policies, practices and customs with respect to probable cause or reasonable suspicion determinations, proper search procedures; internal affairs procedures, the use of physical force, use of canines in policing activities; and racial profiling in deliberate indifference to and reckless disregard of the public at large, including the Plaintiff;

c.      Atlantic City and the Atlantic City Police Department repeatedly and knowingly failed to properly discipline its officers (including Abrams and Jaques) with respect to violations of the law of the State of New Jersey, the Constitution of the United States, and its own policies on use of force, probable cause determinations, demeanor, differential treatment or racial profiling, searches, and internal affairs procedures, creating a pattern, policy, practice, custom or atmosphere where such illegal and unconstitutional behavior is tolerated, condoned, and accepted by the Atlantic City Police Department in deliberate indifference to and reckless disregard of the public at large, including the Plaintiffs;

d.      Atlantic City and the Atlantic City Police Department allow its officers

19

to  engage in conduct that violates the constitutional rights of persons in custody, including Plaintiff, without fear of reprimand, discipline or termination, creating an atmosphere where  such unconstitutional behavior is ratified, tolerated, and condoned, in reckless disregard of and  deliberate indifference to the welfare of the public, including Plaintiff; and

e.      Atlantic City and the Atlantic City Police Department knew that "a code of silence" existed between and among their officers whereby officers would not report misconduct of other officers to their superiors and failed to take steps necessary to break the  "code of silence" which includes, but is not limited to, properly supervising officers, properly investigating critical incidents, holding officers accountable for misconduct and failing to report  misconduct, creating an atmosphere where officers violate the constitutional rights of the public  at large in deliberate indifference to and in reckless disregard of the constitutional rights of the  pubic, including the Plaintiffs;

f.      Atlantic City and the Atlantic City Police Department repeatedly and knowingly failed to properly screen its officers, including defendant Jaques, who had a history of misconduct that included racially-based violence while working in a prior law enforcement position. Atlantic City either turned a blind eye to Jaques history of misconduct when it hired him or did so knowing full well that he was prone to violence and likely to direct that violence unjustifiably toward people of color. Atlantic City fails to conduct meaningful background checks or psychological evaluations of potential candidates, particularly those candidates who have recently come out of the military and may be suffering from post-traumatic stress disorder.

87.      Further, defendant Atlantic City is liable for the actions of ACPD Defendants

20

under its non-delegable duty to provide  officers who comply with the constitutions and laws of the United States of America and the State of New Jersey.

88.     As a direct and proximate result of the foregoing policies, practices, and customs of Atlantic City and the Atlantic City Police Department, the violation of the constitutional rights of the citizens of Atlantic City were substantially certain to occur.

### COUNT VI
### State Law Claim – Assault and Battery

Plaintiffs hereby incorporate, in its entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

89.     The acts, omissions and conduct of defendant JACQUES constitutes an assault and battery against both plaintiffs.

89.     Specifically, defendant JAQUES intended to cause the plaintiffs imminent apprehension of a harmful contact when he arrived on the scene driving recklessly and at an excessive rate of speed as if he was going to ram his police car into plaintiffs' car. Plaintiffs were put in imminent apprehension by JAQUES conduct.

90.     Defendant JAQUES intended to cause plaintiffs' imminent apprehension of harmful contact when he repeatedly screamed obscenities in their faces and threatened physical violence against them. Furthermore, JAQUES intended to cause plaintiffs' imminent apprehension of a harmful contact, namely being bitten by JAQUES' K9 partner where JAQUES threatened to allow the K9 to rip the plaintiffs' bodies apart while the K9 could be heard barking in JAQUES police vehicle. Plaintiffs were put in imminent apprehension by JAQUES' conduct and the vicious barking of the dog.

91.     Defendant JAQUES intended to cause plaintiff Wilson an offensive contact when he ripped plaintiff Wilson's phone out of his hand. Plaintiff Wilson was put in imminent

apprehension by JAQUES' conduct.

92.     There was no legal justification for JAQUES' conduct of recklessly driving his
police vehicle as if he was going to hit plaintiffs' car, threatening physical violence against
plaintiffs, and physically grabbing plaintiff Wilson's phone from his hand.


93.     As a direct and proximate result of the aforementioned acts and omissions of
Defendants, Plaintiffs suffered injuries and damages.

### COUNT VII
### State Law Claim – False Imprisonment

Plaintiffs hereby incorporate, in its entirety, each and every paragraph of this Complaint
and by reference makes said paragraphs a part hereof as if fully set forth herein.

94.     The acts, omissions and conduct of defendants JACQUES and ABRAMS
constitute false imprisonment against both plaintiffs.

95.     Defendants JAQUES and ABRAMS constrained plaintiffs' freedom to move
without legal justification against their will and without their consent.

96.     As a direct and proximate result of the aforementioned acts and omissions of
Defendants, Plaintiffs suffered injuries and damages.


### PUNITIVE DAMAGES AGAINST DEFENDANTS ABRAMS AND JAQUES

Plaintiffs hereby incorporate, in its entirety, each and every paragraph of this Complaint
and by reference makes said paragraphs a part hereof as if fully set forth herein.

97.     The actions and/or omissions of Defendants complained of herein were
unlawful, conscience shocking, and unconstitutional, and performed maliciously, recklessly,
fraudulently,  intentionally, willfully, wantonly, in bad faith, and in such a manner to entitle the

Plaintiffs to a substantial award of punitive damages against defendants.

## DAMAGES

Plaintiff hereby incorporates, in its entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

98.   As a direct and proximate result of the aforementioned actions and omissions of the defendants, Plaintiff was injured and damaged.  The damages for which Plaintiff seeks compensation from the Defendants, both jointly and severally, include, but are not limited to, the  following:

    a.   emotional pain and suffering of a past, present, and future nature;

    b.   loss of enjoyment of life of a past, present, and future nature;

    c.   fright, fear, aggravation, humiliation, anxiety, and emotional distress of a past, present, and future nature.

    d.   attorney's fees pursuant to 42 U.S.C. § 1988;

    e.   punitive damages against applicable defendants;

    f.   pre-and post-judgment interest;

    g.   declaratory judgment and injunctive relief holding that the policies, practices or customs of defendants, complained of herein are illegal and unconstitutional;

    h.   preclusion of defendants from serving in the capacity of law enforcement officers and/or county investigators; and

    i.   all such relief, both general and specific, to which Plaintiff may be entitled to under the premises.

## PRAYERS FOR RELIEF

Plaintiff hereby incorporates, in its entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff sues the Defendants both jointly and severally, for his personal injuries and prays for a judgment against the Defendants for compensatory damages solely in an amount to be determined by a jury as reasonable and for all such further relief, both general and specific, to which he may be entitled under the premises.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff sues Defendants ABRAMS, JAQUES and other unknown ACPD police officers for punitive damages in an amount solely to be determined by a jury as reasonable and for all such further relief, both general and specific, to which he may be entitled under the premises.

**A JURY IS RESPECTFULLY DEMANDED TO TRY THE ISSUES ONCE JOINED.**

Respectfully submitted,

**BONJEAN LAW GROUP, PLLC**
**1000 Dean St., Ste. 422**
**Brooklyn, New York  11238**
**(718) 875-1850**
**(718) 230-0582**

By: s/ JENNIFER BONJEAN

24